**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-24819-CIV-DAMIAN**

**YOEL MARQUEZ OLIVA,**

Petitioner,

v.

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,**

Respondent.
_______________________________________/

**ORDER DISMISSING PETITION**

**THIS CAUSE** is before this Court on the *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"), filed on July 15, 2026, by Yoenis Hernandez Baldriche, purportedly as next friend of detainee Yoel Marquez Oliva ("Petitioner"). On July 17, 2026, this Court entered an Order to Show Cause [ECF No. 4]. Respondent filed a Response to the Order to Show Cause [ECF No. 6] (the "Response") on July 27, 2026.

THE COURT has reviewed the Petition, the Response and accompanying exhibits, the relevant legal authorities, and the pertinent portions of the record and is otherwise fully advised. For the reasons that follow, the Petition is due to be dismissed.

## I. BACKGROUND

Petitioner Yoel Marquez Oliva is a native and citizen of Cuba who was paroled into the United States in January 2006. [ECF No. 1 at 1, 4]. On June 28, 2016, an Immigration Judge entered a final order of removal against him. *Id.* at 4. According to the Petition, Immigration and Customs Enforcement ("ICE") detained Petitioner for approximately ninety days in 2016 but released him under an order of supervision after it was unable to effectuate

his removal. *Id.* at 2, 4. Petitioner alleges that, for nearly ten years thereafter, he regularly reported to ICE and complied with the conditions of his supervision. *Id.* at 2, 4.

On January 6, 2026, ICE again took Petitioner into custody when he appeared for a scheduled supervision check-in. *Id.* at 2, 4. On January 25, 2026, ICE transported Petitioner to El Paso, Texas, in anticipation of removing him to Mexico. [ECF Nos. 6 at 2; 6-1; 6-2 ¶ 6]. ICE thereafter prepared a third-country removal packet and notified Petitioner that Mexico had been tentatively designated as the country of removal. [ECF Nos. 6 at 2; 6-2 ¶ 7].

On February 2, 2026, ICE served Petitioner with a Form I-229(a), Warning for Failure to Depart, which Petitioner declined to sign. [ECF Nos. 6 at 2; 6-2 ¶ 8; 6-3]. According to Respondent, Petitioner refused to dress and board a bus scheduled to transport him to Mexico on February 4, 2026. [ECF Nos. 6 at 2; 6-2 ¶ 9]. ICE returned Petitioner to custody in the Southern District of Florida on February 7, 2026. [ECF Nos. 6 at 2; 6-1; 6-2 ¶ 10].

On March 12, 2026, ICE formally revoked Petitioner's release under the order of supervision and conducted an informal interview concerning the revocation. [ECF Nos. 6 at 2–3; 6-2 ¶¶ 11–12; 6-4]. During that interview, Petitioner stated that he preferred removal to Mexico rather than Cuba. [ECF Nos. 6 at 3; 6-2 ¶ 13; 6-4]. ICE served Petitioner with another Form I-229(a) on March 16, 2026, which he again declined to sign. [ECF Nos. 6 at 3; 6-2 ¶ 14; 6-5].

On March 29, 2026, ICE transported Petitioner to the Hidalgo, Texas Port of Entry for removal to Mexico. [ECF Nos. 6 at 3; 6-1; 6-2 ¶ 15]. Respondent represents that Petitioner refused to exit the bus at the border on March 30, 2026, thereby preventing ICE from effectuating his removal. [ECF Nos. 6 at 3; 6-2 ¶ 16]. ICE returned Petitioner to custody in the Southern District of Florida on April 3, 2026, and served him with a failure-to-comply letter on April 8, 2026. [ECF Nos. 6 at 3; 6-1; 6-2 ¶¶ 17–18; 6-6]. On June 4, 2026, ICE served

Petitioner with a third Form I-229(a) and another notice designating Mexico as the proposed third country for removal; Petitioner declined to sign either document. [ECF Nos. 6 at 3; 6-2 ¶ 19; 6-7].

This is not Petitioner's first challenge to the present detention. On February 23, 2026, Petitioner, acting through his cousin and purported next friend, Yoenis Hernandez Baldriche, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Middle District of Florida. *See Marquez Oliva v. Warden, Krome Detention Center*, No. 26-21412-CIV-DAMIAN, ECF No. 1 (S.D. Fla. Feb. 23, 2026) (the "Prior Action"). The Middle District transferred the Prior Action to this District on February 26, 2026, and this Court received the action on March 3, 2026. *Id.* at ECF Nos. 2–3. After the Respondents filed their return on March 12, 2026, *id.* at ECF No. 6, this Court dismissed the petition in the Prior Action without prejudice on May 27, 2026, because Mr. Hernandez Baldriche had not established next-friend standing, *id.* at ECF No. 7. This Court also explained that it lacked jurisdiction to review ICE's decision to revoke Petitioner's order of supervision and that Petitioner's claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), was premature because he had been detained for fewer than six months.

On July 15, 2026, Mr. Hernandez Baldriche filed the present Petition, again purporting to act as Petitioner's next friend. [ECF No. 1]. The present Petition is materially identical to the petition filed in the Prior Action. It repeats the same factual allegations, advances the same grounds for relief under *Zadvydas*, relies on the same allegations to establish Mr. Hernandez Baldriche's next-friend standing, and requests the same relief—Petitioner's immediate release under appropriate conditions of supervision. *Compare* ECF No. 1 at 1–7, with Prior Action, ECF No. 1 at 1–7. The present Petition neither identifies the Prior Action nor acknowledges this Court's May 27, 2026 Order dismissing the prior petition.

On July 17, 2026, this Court entered an Order directing Respondent to show cause why the Petition should not be granted. [ECF No. 4]. Respondent filed a Response on July 27, 2026. [ECF No. 6]. In the Response, Respondent contends that Petitioner's continued detention is lawful under 8 U.S.C. § 1231(a)(6) because Petitioner twice prevented ICE from effectuating his removal to Mexico, and ICE is attempting to pursue Petitioner's removal to an alternate third country. [ECF Nos. 6 at 1, 6–7; 6-2 ¶¶ 9, 16, 21]. Respondent also argues that Baldriche again has not established next-friend standing to prosecute the Petition on Petitioner's behalf. [ECF No. 6 at 8–9]. The Order to Show Cause permitted Petitioner to file a reply within five days after Respondent filed its Response. [ECF No. 4 at 3]. More than five days have elapsed, and Petitioner has not filed a reply or otherwise responded to Respondent's submission. Petitioner remains detained at the Federal Detention Center in Miami. [ECF No. 6-2 ¶ 20].

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. *See* 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### *A. Next Friend Status.*

An application for a writ of *habeas corpus* may be filed by someone acting on a petitioner's behalf, commonly known as a "next friend." *See* 28 U.S.C. § 2242. Federal courts, however, do not automatically grant next friend standing to whomever seeks to pursue an

action on behalf of another. *See Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990); *Sanchez-Velasco v. Sec'y Dep't of Corr.*, 287 F. 3d 1015 (11th Cir. 2002). To be entitled to proceed for someone else as "next friend," a person must satisfy the following two requirements:

> First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

*Sanchez-Velasco*, 287 F.3d at 1025 (quoting *Whitmore*, 495 U.S. at 163–64 (internal quotation marks and citations omitted)). "Absent 'next friend' status, an individual lacks Article III standing to file a petition on another's behalf, thus stripping the district court of jurisdiction to consider the petition." *Francis v. Warden, FCC Coleman-USP*, 246 F. App'x 621, 622 (11th Cir. 2007) (citing *Whitmore*, 495 U.S. at 164). "The burden is on the 'next friend' to clearly establish the propriety of his [or her] status and thereby justify the jurisdiction of the court." *Whitmore*, 495 U.S. at 164 (citations omitted).

To proceed with the instant Petition on Petitioner's behalf, Mr. Hernandez Baldriche must meet the two aforementioned requirements. Proceeding out of order, Mr. Hernandez Baldriche states that he is "Petitioner's cousin and maintains a close familial relationship with him." Pet. at 3. Therefore, the second requirement is likely satisfied.

As to the first requirement, Mr. Hernandez Baldriche must show "that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability." *Whitmore*, 495 U.S. at 165. In the Petition, Mr. Hernandez Baldriche does not allege that Petitioner is unable to litigate his own cause due to any of these reasons and relies on generalized grievances that most detainees face, such as "limited access to legal materials, writing supplies, . . . legal research tools, copying services, or the ability to

prepare and file complex constitutional pleadings." Pet. at 3; *see also Movimiento Democracia, Inc. v. Sec'y, Dep't of Homeland Sec.*, 720 F. App'x 545, 547 (11th Cir. 2017) ("[T]here has been no suggestion that Family Plaintiffs were unable to advance Migrant Plaintiffs' interests, thus the Migrant Plaintiffs have had adequate access to the court through Family Plaintiffs without extending 'next friend' status to Movimiento.").

The undersigned notes that this Court sees numerous *pro se* petitioners in immigration custody seeking relief who face the same conditions as Petitioner and are able to litigate their petitions. Morevoer, this Court previously explained the requirements for pleading next friend status, and Mr. Hernandez Baldriche still altogether fails to attempt to explain the need for use of a next friend. At bottom, Mr. Hernandez Baldriche offers nothing to show that Petitioner warrants any special protection by a next friend to litigate on his behalf. *See Perez v. ICE/U.S. Immigr. & Customs Enf't*, No. 2:26-CV-54-KCD-DNF, 2026 WL 358179, at *1 (M.D. Fla. Feb. 9, 2026).

Because Mr. Hernandez Baldriche does not demonstrate the propriety of "next friend" status, he lacks standing to initiate this action on Petitioner's behalf. *See Francis v. Warden, FCC Coleman-USP*, 246 F. App'x 621, 622 (11th Cir. 2007) ("Absent 'next friend' status, an individual lacks Article III standing to file a petition on another's behalf, thus stripping the district court of jurisdiction to consider the petition."); *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978) ("[W]hen the application for habeas corpus filed by a would be 'next friend' does not set forth an adequate reason or explanation of the necessity for resort to the 'next friend' device, the court is without jurisdiction to consider the petition.").

And, because Mr. Hernandez Baldriche has not indicated that he is an attorney, he cannot represent Petitioner in this action. *See Weber*, 570 F.2d at 514; *Marcia Turner v. Neptune Towing & Recovery, Inc.*, No. 8:09-CV-I071-T-27AEP, 2011 WL 2981786, at *2 (M.D. Fla.

July 22, 2011) ("Under Rule 17(c), a representative does not have the right to appear on behalf of a minor or an incompetent person unless that representative is represented by counsel."); *Bey on behalf of Baxter v. Fla.*, No. 4:24CV517/MW/ZCB, 2025 WL 351425, at *1 n.2 (N.D. Fla. Jan. 6, 2025).

Accordingly, this Court finds that Mr. Hernandez Baldriche fails to meet the first element of the two-part "next friend" test, depriving him of Article III standing and stripping this Court of jurisdiction. *See Whitmore*, 495 U.S. at 165. As a result, the Petition must be dismissed for lack of jurisdiction on these grounds.

While a lack of standing divests this Court of jurisdiction to consider the Petition, it is possible that Mr. Hernandez Baldriche may be able to present additional information to satisfy the first element of the next friend test. Therefore, for efficiency, this Court also points out that even if he had standing, under the circumstances presented, Petitioner would not be entitled to habeas relief.

***B. Revocation Of Petitioner's Order Of Supervision.***

To the extent Petitioner seeks to challenge the validity of his final order of removal, this Court lacks jurisdiction to consider that claim. Section § 8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The statute's intent is to "bar[] federal courts from hearing 'any cause or claim' by an alien 'arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021). Instead, "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" *Id.*

(quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)). "[T]he Supreme Court has explained, § 1252(g) lists just three 'discrete actions': actions to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Camarena*, 988 F.3d at 1272 (quoting *Reno*, 525 U.S. at 482). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [a court's] review (at least by this provision)." *Camarena*, 988 F.3d at 1272 (quoting *Reno*, 525 U.S. at 482).

The district courts have applied the Eleventh Circuit's reasoning to OSUPs. *See, e.g.*, *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) (Gayles, J.) ("The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of § 1252(g)"; *Garcia v. Miami Field Office Director*, No. 25-Cv-23169, 2026 WL 632351, at *4 (S.D. Fla. Mar. 6, 2026) (Altman, J.) ("As applied here, those tools make clear that we lack jurisdiction to stay the Petitioner's removal or transfer and to second-guess the Respondents' decision to revoke the OSUP. Just as we cannot *overread* § 1252(g), we also can't *underread* its text."); *see also Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) (Ruiz, J.) (citing *Tran v. Baker*, No. 1:25-CV-01598-JRR, 2025 WL 2085020, at *4 (D. Md. July 24, 2025), *corrected*, 2025 WL 2087124 (D. Md. July 24, 2025) (stating that § 251.4(l)(2) "permits the Government extraordinarily broad discretion to revoke an OSUP")). This Court likewise follows this line of reasoning and finds that if Petitioner is truly challenging the revocation of the Order of Supervision, this Court lacks jurisdiction to entertain such a request.

***C. Petitioner's Obstruction of Removal Defeats His Zadvydas Claim.***

Petitioner also challenges his post-removal detention as unreasonable due to the length of time he has been detained.

"Congress mandates that the Attorney General '*shall* detain [an] alien' who has been ordered removed from the United States 'within a period of 90 days.'" *Phadael v. Ripa*, No. 24-cv-22227, 2024 WL 3088350, at *2 (S.D. Fla. June 21, 2024) (Altman, J.) (quoting 8 U.S.C. § 1231(a)(1), (2)). Given that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Supreme Court precedent holds "that the Government must 'limit[ ] an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States.'" *Phadael*, 2024 WL 3088350, at *2 (quoting *Zadvydas*, 533 U.S. at 689–90). Under *Zadvydas*, "six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing *Zadvydas*, 533 U.S. at 701). Six months remains a "guidepost" for the lower courts to follow. *Phadael*, 2024 WL 3088350, at *2. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Therefore, "to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Phadael*, 2024 WL 3088350, at *2 (quoting *Akinwale*, 287 F.3d at 1052). "If the detainee makes such a showing, the Government has the right to 'respond with evidence sufficient to rebut that showing.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

Here, the impediment to removal is not a lack of diligence by the Government in executing Petitioner's final order of removal. Rather, the record reflects that Petitioner has actively obstructed the Government's removal efforts. As explained in the Response, on February 4, 2026, Petitioner refused to dress and board a bus for removal to Mexico. [ECF No. 6-2 ¶ 9]. After Petitioner later stated that he preferred removal to Mexico rather than

Cuba, *id.* ¶ 13, ICE transported him to the Hidalgo, Texas Port of Entry, where, on March 30, 2026, he refused to exit the bus to effectuate his removal, *id.* ¶¶ 15–16. Petitioner also repeatedly refused to sign Forms I-229(a) warning him of his obligation to assist in his departure. *Id.* ¶¶ 8, 14, 19; *see also* ECF Nos. 6-3, 6-5, 6-7. ICE nevertheless continues to pursue Petitioner's removal to an alternate third country. Id. at ¶ 21.

Under *Zadvydas*, a petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. 701. A detainee cannot establish that removal is not reasonably foreseeable by obstructing the Government's efforts until six calendar months have elapsed and then invoking *Zadvydas's* presumptive guideline. Congress expressly provides that the removal period "shall be extended" when an alien "conspires or acts to prevent [his] removal," and the alien may remain detained during that extended period. 8 U.S.C. § 1231(a)(1)(C). Consistent with that provision, the Eleventh Circuit has recognized that *Zadvydas*'s six-month period is tolled when the alien acts to prevent removal. *Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal.").

Although Petitioner has been detained since January 6, 2026, his obstruction of two concrete removal attempts extended the removal period under § 1231(a)(1)(C). Moreover, the Government's repeated efforts to remove Petitioner to Mexico (and its continuing efforts to secure his removal to another third country) affirmatively demonstrate that removal remains significantly likely in the reasonably foreseeable future. [ECF No. 6-2 ¶¶ 6–9, 15–16, 21]. Petitioner therefore cannot carry his threshold burden under *Zadvydas* and is not entitled to habeas relief.

## IV. CONCLUSION

This Court finds that Mr. Hernandez Baldriche has not established next-friend standing and, therefore, that the Petition must be dismissed for lack of jurisdiction. This Court further finds that, even if Mr. Hernandez Baldriche had established next-friend standing, this Court would lack jurisdiction to review ICE's revocation of Petitioner's order of supervision, and Petitioner would not otherwise be entitled to habeas relief because he cannot satisfy the threshold burden under *Zadvydas*.

Accordingly, and for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. It is further

**ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case. All pending motions, if any, are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 4th day of August, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: Yoel Marquez Oliva, *Pro Se*
A-099-571-902
Krome North Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194